IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LOURDES TERRAZAS-SILAS,<br><br>Defendant. | Case No. 1:19-cr-000127<br><br>Honorable Leonie M. Brinkema<br><br>Motions Hearing: June 7, 2019 |

## RESPONSE OF THE UNITED STATES TO
## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and Anthony W. Mariano, Special Assistant United States Attorney, and Danya E. Atiyeh, Assistant United States Attorney, hereby submits this memorandum in opposition to the defendant's motion to dismiss the indictment (hereinafter, the "Motion") filed by defendant Lourdes Terrazas Siles.[1] For the following reasons, the Court should deny the defendant's Motion.

### BACKGROUND

The defendant is a native of Bolivia. On December 5, 1999, the defendant illegally entered the United States at the San Ysidro Port of Entry. Upon entering the United States, the defendant was questioned by federal immigration officials, at which time she admitted that she was attempting to enter the United States with a fraudulent passport. [Gov't Ex. 2.] She admitted she knew her conduct was illegal, and that she did not have any legal document allowing

---

[1] The defendant's motion to dismiss states that "the correct spelling of [the defendant's] name is 'Lourdes Terrazas Siles.'" [Motion, at 1, n.1.] In reliance on this assertion, the United States moves to amend the caption to reflect the defendant as "Lourdes Terrazas Siles, AKA Lourdes Terrazas-Silas." Both names appear throughout the defendant's immigration file.

1

her to enter or reside in the United States. [*Id.*] The defendant was ordered removed on December 6, 1999. [Def. Ex. C.] The defendant remained in the custody of the Immigration and Naturalization Service ("INS") until her removal from the United States on January 27, 2000. [Def. Ex. D.]

On August 19, 2016, Immigration and Customs Enforcement ("ICE") received information from the Prince William County Adult Detention Center, located in Manassas, Virginia, that the defendant was detained following an arrest for aggravated sexual battery. ICE performed a records check and confirmed that the defendant is a Bolivian national who had been removed from the United States to Bolivia on January 27, 2000. On June 13, 2017, the defendant was convicted in the Commonwealth of Virginia of felony aggravated sexual battery by a parent, step-parent, grandparent, or step-grandparent of a victim at least thirteen years old but less than eighteen years old, based on the defendant's ongoing sexual abuse of her daughter over the course of six years. The defendant was sentenced to twenty years' incarceration with seventeen years suspended.

On February 27, 2019, the United States filed a criminal complaint against the defendant. [Dkt. 1.] The defendant was released from state custody for her aggravated sexual battery conviction in early April 2019. On April 4, 2019, ICE arrested the defendant, at which point she was turned over to the United States Marshals Service pursuant to the criminal complaint. On April 18, 2019, the defendant was indicted by the grand jury for reentering the United States after having been removed therefrom, in violation of Title 8, United States Code, Section 1326(a). [Dkt. 11.] An arraignment was held on April 26, 2019 before this Court. [Dkt. 17.] The matter is currently scheduled for trial on June 24, 2019. [*Id.*]

**ARGUMENT**

I. **The Statute of Limitations Has Not Expired, Because, After Reentering the United States, Federal Authorities First Encountered the Defendant on August 19, 2016, Following Her Arrest for Aggravated Sexual Battery.**

The statute of limitations for an illegal reentry offense is five years. 18 U.S.C. § 3282(a). Because illegal reentry after removal is a continuing offense, the statute of limitations does not begin to run on the offense until the defendant is "found in" the United States. *See United States v. Uribe-Rios*, 558 F.3d 347, 356 (4th Cir. 2009); *United States v. Vega-Pena*, 668 F. Supp. 2d 742, 744 (E.D. Va. 2009). A defendant is "found in" the United States only when federal authorities have actual knowledge of the defendant's identity and illegal presence in the United States. *See Uribe-Rios*, 558 F.3d at 353. "The government bears the burden of proving that it began its prosecution within the statute of limitations period." *United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997).

The defendant argues that the statute of limitations began to run on May 29, 2001, because "[o]n May 29, 2001, an immigration official queried Ms. Terrazas Siles' record, indicating an awareness of her presence in the United States at the time." [Motion, at 4.] In response to this Motion, the United States has made available to the defendant additional documents with relevant information, which are also attached to this memorandum. [*See* Gov't Exs. 3–6.] Government's Exhibit 3 reflects a July 13, 2007 update to immigration databases. [*See* Gov't Ex. 3.] Government's Exhibit 4 reflects July 13, 2007, September 3, 2007, and May 24, 2008 updates to immigration databases. [*See* Gov't Ex. 4.] Government's Exhibit 5 reflects a May 25, 2008 update to immigration databases. [*See* Gov't Ex. 5.] Finally, Government's Exhibit 6 reflects November 18, 2004 and February 24, 2008 updates to immigration databases. [*See* Gov't Ex. 6.]

While these records indicate database updates between 2001 and 2008 regarding the defendant, they do not reflect actual knowledge of the defendant's presence in the United States

by federal authorities. In fact, ICE Deportation Officer Kevin Ho explains that the May 29, 2001 record "appears to be a historical fingerprint enrollment entered into the system after the original date of the encounter or apprehension for watchlist purposes only." [Gov't Ex. 1, at ¶ 7.] As Deportation Officer Ho notes, "There are no information or records that establish a new immigration arrest or encounter occurring on May 29, 2001." [*Id.*] The July 13, 2007, September 3, 2007, May 24, 2008, and May 25, 2008 references likewise reflect data entry related to the migration from one data system to another, not actual encounters of the defendant. [*Id.* at ¶ 8.] Finally, the November 18, 2004 and February 24, 2008 references reflect updates to a standard person query form, which exists for every alien, and do not reflect any subsequent encounter of the defendant by federal immigration authorities. [*Id.* at ¶ 9.] Deportation Officer Ho concludes, "A full review of immigration databases, records, and TERRAZAS-SILAS's Alien Registration file show that the only immigration encounters with TERRAZAS-SILAS appear to be on or around December 5, 1999, August 19, 2016, and April 4, 2019." [*Id.* at ¶ 10.]

The defendant offers, "as an aside," that the defendant was previously encountered by local Virginia law enforcement in 2001, 2003, and 2004—when the defendant was arrested on domestic violence, shoplifting, and failure to appear charges. The defendant does not explicitly argue that such local law enforcement encounters trigger the statute of limitations for this offense. The defendant is correct not to make such an argument, since it has been roundly rejected by the Fourth Circuit. *See Uribe-Rios*, 558 F.3d at 356 ("[F]undamental principles of dual sovereignty do not allow us to impute the knowledge of state officials to federal officials."); *United States v. Vargas*, 408 F. App'x 676, 679 (4th Cir. 2011); *United States v. Ibarra-Reyes*, No. CRIM.A. 3:07CR345, 2007 WL 4287753, at *3 (E.D. Va. Dec. 5, 2007) ("Apprehension of an alien by local law enforcement does not constitute being 'found' under 8 U.S.C. § 1326."). "In fact, courts have uniformly declined to find that state officials' knowledge of an alien's illegal presence in the

4

United States may be imputed to federal immigration authorities to trigger the limitations period." *Uribe-Rios*, 558 F.3d at 353.

Because, following her removal in January 2000, federal immigration authorities did not encounter the defendant again until her August 2016 arrest for aggravated sexual battery, the prosecution of the defendant is within the statute of limitations. The referenced events in the defendant's immigration file before 2016 do not reflect actual encounters with the defendant in the United States; instead, they reflect only routine administrative database updates regarding the defendant.

## II. Section 1225(b)(1)(D) Bars Collateral Review of the Defendant's Expedited Removal.

Under 18 U.S.C. § 1326(d), an alien "may not challenge the validity of" the prior removal order unless three prerequisites are met. But Congress provided a different standard for certain aliens, like the defendant, who are stopped at the border before entering the United States, submit a fraudulent passport, and have no claim for asylum. In that scenario, Congress provided in legislation enacted at the same time as Section 1326(d) that, "[i]n any action brought against an alien . . . section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii)." 8 U.S.C. § 1225(b)(1)(D).[2] A similar limitation governs the reviewability of expedited removal

---

[2] A judge in this district recently concluded that Section 1225(b)(1)(D) is unconstitutional under *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), *see United States v. Silva*, 313 F. Supp. 3d 660, 668 (E.D. Va. 2018). For several reasons, this Court need not address the validity of the district court ruling in *Silva*. First, the defendant has not raised a constitutional challenge to Section 1225(b)(1)(D), and a court should not invalidate an act of Congress without full briefing. Second, the *Silva* case has been appealed to the Fourth Circuit in No. 18-4652, and was argued on May 9, 2019, where the United States defended the constitutionality of Section 1225(b)(1)(D). Thus, the Fourth Circuit will resolve this issue soon. Third, "the principle of constitutional avoidance . . . requires the federal courts to strive to avoid rendering constitutional rulings unless

decisions at the time they are processed. *See* 8 U.S.C. § 1225(b)(A)(i) (requiring in the expedited removal context that the immigration officer "shall order the alien removed from the United States without further hearing or review").

This restriction on review of an expedited removal order is unsurprising given the established principle that "the power to expel or exclude aliens [i]s a fundamental sovereign attribute exercised by the Government's political departments [and] largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). "For more than a century," the Supreme Court has recently reiterated, the Court has "recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2019) (citations omitted). And more specifically, "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950); *see also Zadvyas v. Davis*, 533 U.S. 678, 693 (2001) ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders.").

Accordingly, under Section 1225(b)(1)(D), the process that Congress has provided—and that an arriving alien like defendant may demand—does not carry the right to review that defendant

---

absolutely necessary," and that principle applies where "any [asserted constitutional] error was harmless." *United States v. Reed*, 780 F.3d 260, 269 (4th Cir. 2015) (citation omitted). In analyzing whether a defendant would not have been deported, a court need not review "claim[s] attacking the validity of an order of removal," and can simply conclude that regardless of any alleged defect in the prior removal order, the defendant fails to show that she would not have been removed regardless. *See, e.g.*, *United States v. Lopez-Vasquez*, 227 F.3d 476, 486 (5th Cir. 2000) (declining to rule on the constitutionality of Section 1225(b)(1)(D) and noting that "section 1225(b)(1)(D) does not preclude the district court or this court from determining that the requisites of a *Mendoza-Lopez* claim as asserted by Lopez-Vasquez are *not* met"). As discussed below, here there is no doubt that the alleged defects in the defendant's expedited removal, if they existed, were harmless.

seeks here. Thus, defendant's claim must fail.

### III. The Defendant's Collateral Attack Fails Because She Has Not Shown Fundamental Unfairness in Her Prior Removal Proceedings.

Even if the Court declines to apply Section 1225(b)(1)(D), the defendant's Section 1326(d) argument also fails because the defendant has not shown any fundamental unfairness in her prior removal proceedings. In order to challenge the validity of a prior removal order in a Section 1326(a) prosecution, the defendant must show that (i) the alien exhausted all administrative remedies available, (ii) the alien was removed subject to an order that deprived the alien of the opportunity for judicial review, and (iii) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). Under the fundamental unfairness prong of this analysis, "a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Lopez-Collazo*, 824 F.3d at 457 (quoting *El Shami*, 434 F.3d at 664); *see also Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008). The defendant bears the burden to show both due process violations and associated prejudice. *See, e.g.*, *El Shami*, 434 F.3d at 665.

A. <u>There Was No Due Process Violation in the Defendant's Removal Proceedings</u>.

The defendant alleges two defects in her expedited removal proceedings. First, the defendant claims that she does not remember certain "critical documents" being translated into her native Spanish language. [Motion, at 9.] Second, the defendant claims that she did not sign the Notice/Order of Expedited Removal, also known as the Form I-860. [*See* Motion, at 10–11.] In making both of these claims, the defendant is not contending that she could have obtained a right to enter the United States. She lacked lawful status in the United States, had just presented a fraudulent passport, and had no claim for asylum. Rather, her claim is that she could have sought withdrawal of her application for admission. But aliens have no right to withdraw their

7

applications for admission. *See, e.g.*, 8 C.F.R. 235.4. The defendant also draws on the most tenuous connections between the alleged procedural defects she claims and arguments that she would have withdrawn her application and that she would have been permitted to do so despite submitting a fraudulent passport.

The defendant has not carried the burden of demonstrating any due process violation in the procedures observed by immigration officials in her expedited removal. First, the defendant fails to meet her burden in her claim about translation. In support of this claim, she relies exclusively on her self-serving statement that she "ha[s] no recollection of the officials translating any other forms for me." [Def. Ex. A.]

But the contemporaneous evidence rebuts the defendant's claims. The Record of Sworn Statement in Proceedings Under Section 235(b)(1) of the Act (Form I-867) indicates that the interview translator was Immigration Inspector R. Sorges. [Gov't Ex. 2.] The defendant admits this document was translated for her. [*See* Def. Ex. A.] Immigration Inspector Sorges is the same individual who signed both the Determination of Inadmissibility (Form I-860) and Notice to Alien Ordered Removed (Form I-296)—the documents the defendant now complains were never translated. [*See* Def. Exs. C–D.] There is no cause to doubt that the same government official who translated the Form I-867 with an alien would also have translated the Forms I-860 and I-296 when interacting with that same alien. The defendant also signed the Form I-296, providing further evidence that it was translated and she understood it.

Moreover, administrative agencies are entitled to a presumption that they "act properly and according to the law." *F.C.C. v. Schreiber*, 381 U.S. 279, 296 (1965). "In the absence of clear evidence to the contrary, courts presume that public officers properly discharge their duties . . . ." *Cnty. of Del Notre v. United States*, 732 F.2d 1462, 1468 (9th Cir. 1984); *see also United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926); *INS v. Miranda*, 459 U.S. 14 (1982).

The defendant also claims that she did not sign the Form I-860 and that this constitutes a due process violation. There are two reasons to doubt this alleged deficiency. First, the defendant signed both the Forms I-296 and the I-867, the latter of which was signed the same day as the Form I-860. This circumstantial evidence suggests that the defendant understood the nature of the proceedings against her and was signing the relevant documents. Second, Immigration Inspector R. Sorges signed a certificate of service indicating that he personally served the original Form I-860 on the defendant. The defendant's claim that she—almost nineteen years later—does not "recall being asked to sign that form" is not enough to carry her burden of demonstrating a due process violation. Unsurprisingly, the only circuit to have addressed this claimed deficiency has held that an alien does not "carry his burden of proof on this claim and cannot establish the existence of a due process violation or prejudice" where "the record is silent as to whether [the alien] signed the back of the Form I-860." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 n.12 (9th Cir. 2011). Moreover, the defendant cannot establish that such an error would constitute a due process violation or that it would have any bearing on the withdrawal of an application for admission.

B. <u>Even if There Were Defects in the Defendant's Removal Proceedings, the Defendant Was Not Prejudiced</u>.

Even if the defendant prevailed in her claim that there were due process violations in the defendant's expedited removal, her motion to dismiss must nevertheless fail because she has not demonstrated prejudice. "[T]o meet the actual prejudice requirement, [a defendant] must demonstrate 'that, but for the errors complained of, there was a *reasonable probability* that he would not have been deported.'" *Lopez-Collazo*, 824 F.3d at 462 (emphasis added) (quoting *El Shami*, 434 F.3d at 665) ("This is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at

9

issue."). "The defendant's burden is to show that actual prejudice *resulted from* the due process violation at issue." *Id.* at 466.

> i. The Defendant Has Not Demonstrated She Would Have Requested Withdrawal of Her Application for Admission.

Even if the defendant could show that the Forms I-860 and I-296 were never translated and that the defendant never signed the Form I-860, the defendant offers no persuasive reason why such a defect would "undermine [the] proceeding." *Anim*, 535 F.3d at 256. The defendant misleadingly conflates the purported failure to translate the Forms I-860 and I-296, and the absence of a countersignature on the Form I-860, with a "failure to notify her of the charge and allegations." [Motion, at 12.] The defendant's selective focus on the Forms I-860 and I-296 obscure the indisputable fact that the defendant was provided ample notice of the proceedings and their import, as demonstrated through the Form I-867, which the defendant concedes was translated. The Form I-867 in this case provides the defendant with clear notice of the nature of the proceedings against her:

> You do not appear to be admissible or to have the required legal papers authorizing your admission to the United States. This may result in your being denied admission and immediately returned to your home country without a hearing. If a decision is made to refuse your admission into the United States, you may be immediately removed from this country, and if so, you may be barred from reentry for a period of 5 years or longer. This may be your only opportunity to present information to me and the Immigration and Naturalization Service to make a decision.

[Gov't Ex. 2.] The defendant was asked if she understood what had been explained to her, and she responded, "Yes." [*Id.*] The defendant initialed each page of this document and signed the last page. [*Id.*] The defendant never explains precisely what information is contained only in the Form I-860 or the Form I-296—and not also in the above statement made to the defendant or otherwise captured in the Form I-867. Neither the Form I-860 nor the Form I-296 invites an alien to pursue any administrative or judicial remedies; indeed, the defendant contends no such review

system exists. Likewise, neither form advises an alien of the opportunity to seek to withdraw her application for admission.

The defendant claims, "I did not know that I could ask to withdraw my attempt to be admitted to the U.S. If I had known that was an option, I would have made that request." [Def. Ex. A.] What the defendant elides is that, even if each of the errors she claims were resolved, she still would not have been informed that she "could ask to withdraw [her] attempt to be admitted to the U.S." [*Id.*] "Neither the statute, nor the regulations, require that an immigration officer advise the alien of his opportunity to request withdrawal of his application for admission, subject to the Attorney General's discretion." *United States v. Meraz-Olivera*, 472 F. App's 610, 612 (9th Cir. 2012); *see also United States v. Silva*, 313 F. Supp. 3d 660, 679–80 (E.D. Va. 2018); *United States v. Ramos-Ramirez*, 128 F. Supp. 3d 896, 901 (D. Md. 2015) (noting that "[t]he Fourth Circuit has not squarely addressed this issue, though 'the majority of circuits which have addressed the issue have concluded that there is no constitutional right to be informed of the existence of discretionary relief for which a potential deportee might be eligible.'" (alterations omitted) (quoting *United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004))). Accordingly, the defendant fails the critical requirement that the "the defendant must link the actual prejudice [s]he claims to have suffered to the specific due process violation at issue." *Lopez-Collazo*, 824 F.3d at 462.

> ii. The Defendant Has Not Demonstrated a "Reasonable Probability" that a Request To Withdraw Her Application Would Have Been Granted.

There is no right to withdraw an application for admission. *See, e.g.*, *Silva*, 313 F. Supp. 3d at 678. "[A] grant of withdrawal of application rests in the discretion of the Attorney General." *Id.* The record demonstrates it is unlikely the defendant would have been granted the remedy of

11

withdrawal had she requested it. At the very least, the defendant has failed to carry her burden of demonstrating "reasonable probability" that withdrawal would have been permitted.

As the defendant correctly notes, in evaluating a request for withdrawal, the INS Field Manual directed immigration officials to consider six nonexhaustive factors: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and, (6) other humanitarian or public interest considerations." *Silva*, 313 F. Supp. 3d at 678 (alteration omitted) (quoting *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014)). Before even turning to these factors, the defendant would have been an implausible candidate for withdrawal, given that she attempted to enter the United States with fraudulent documents. *See, e.g.*, *Raya-Vaca*, 771 F.3d at 1210 (noting that fraud in entry "renders relief implausible"); *Silva*, 313 F. Supp. 3d at 683 (placing substantial weight on the defendant's fraud in attempting to enter the United States in determining that there was not a reasonable probability of withdrawal); *Barajas-Alvarado*, 655 F.3d at 1091 (characterizing fraud as having a "disqualifying effect" on the availability of withdrawal). The INS Field Manual notes, "An expedited removal order should ordinarily be issued, rather than permitting withdrawal, in situations where there is obvious, deliberate fraud on the part of the applicant." INS Inspector's Field Manual § 17.2(a) (2007) (including, as an example, "where counterfeit or fraudulent documents are involved"). The record reflects—and the defendant does not contest in her affidavit—that she attempted to enter the United States using a fraudulent passport. [*See* Gov't Ex. 2.]

In considering the INS Field Manual factors, there would be no basis to deviate from the default approach that an alien attempting to enter with fraudulent documents proceed through expedited removal without a grant of withdrawal. Both the seriousness of the violation and the

intent on the part of the alien counsel against withdrawal in the defendant's case, given the obvious fraud she demonstrated in her attempt to enter. The final three factors—the ability to overcome the ground of inadmissibility, the age or poor health of the alien, and other humanitarian or public interest considerations—offer the defendant no aid and are, at best, neutral. The only factor that inures to the defendant's favor is her lack of prior removals. The defendant has offered nothing to suggest that one favorable factor out of six is enough to overcome the default approach of expedited removal for attempted fraudulent entries. In light of the statistics the defendant cites—noting that withdrawal is denied in most cases—the defendant has failed to carry her burden of demonstrating a reasonable probability of prejudice in this case.

## IV. Section 1326 Does Not Require a "Prior Entry."

The Fourth Circuit has identified two elements essential to a Section 1326(a) prosecution: first, "the defendant was deported or removed from the United States while an order of deportation or removal was outstanding," (the removal element) and, second, "the defendant subsequently entered, attempted to enter, or was at any time found in, the United States without authorization" (the entry element). *United States v. Guzman-Velasquez*, 919 F.3d 841, 844 (4th Cir. 2019) (alterations omitted) (internal quotation marks omitted) (quoting 8 U.S.C. § 1326(a)). Both elements are straightforward. The removal element demands "the government prove, as an element of the offense, the defendant's prior removal or deportation." *United States v. Moreno-Tapia*, 848 F.3d 162, 165 (4th Cir. 2017); *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005) ("[A] deportation order is an element of the offense of illegal reentry.").

The entry element requires that the defendant "enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a). In interpreting this element, the so-called "official restraint" doctrine, as announced by the Ninth Circuit, states that "a person does not commit an unlawful entry into the United States if he or she was 'under constant observation by

13

governmental authorities' from the time of physical entry until the time of arrest." *United States v. Vela-Robles*, 397 F.3d 786, 788 (9th Cir. 2005) (quoting *United States v. Castellanos-Garcia*, 270 F.3d 773, 775 (9th Cir. 2001)); *see also Lazarescu v. United States*, 199 F.2d 898, 900 (4th Cir. 1952) (interpreting the meaning of "entry" in the context of a defendant who was entering following a prior removal order).

The defendant argues that her entry in December 1999 "was not an 'entry'" and, accordingly, the defendant "cannot now be said to be *re*-entered." [Motion, at 14.] The defendant's motion to dismiss obscures the difference between the removal and entry elements. In effect, the defendant asks the Court to add a new element: a "prior entry" element—and to apply the "official restraint" doctrine to it. This Court has never interpreted the phrase "excluded, deported, or removed" to require an "entry." *Moreno-Tapia*, 848 F.3d at 165 ("Typically, the government may rely on the removal order itself, issued by the Department of Homeland Security . . . to meet this burden."). In fact, the undersigned is not aware of any federal court adopting the defendant's atextual interpretation.

The defendant's argument rests entirely on the use of the word "*re*-entry" in the title of Section 1326. [Motion, at 14.] The defendant does not mention that the word "reentry" never appears in the text of Section 1326(a). *See* 8 U.S.C. § 1326(a). The plain meaning of the statute is clear on its face, and the Court need not resort to interpreting the title to understand the elements of the charged offense. *See Brotherhood of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 528–29 (1947) ("[T]he title of a statute and the heading of a section cannot limit the plain meaning of the text. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain."); *Owens v. Baltimore City State's*

14

*Attorneys Office*, 767 F.3d 379, 394 (4th Cir. 2014) ("[A] statute's title provides little assistance to courts interpreting statutory provisions.").

Because Section 1326(a) requires only that the defendant have been previously "deported or removed from the United States"—which the defendant does not contest—the defendant's argument should be rejected. The elements of a Section 1326(a) offense are clear, and the defendant does not argue that there is a deficiency in the government's case regarding any recognized element of the crime.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion to dismiss the indictment.

        Respectfully submitted,

        G. Zachary Terwilliger
        United States Attorney

By:          /s/
        Anthony W. Mariano
        Special Assistant United States Attorney
        Danya E. Atiyeh
        Assistant United States Attorney
        United States Attorney's Office
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Phone: (703) 299-3700
        Fax:   (703) 299-3868
        Anthony.Mariano2@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on May 31, 2019, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

                                    /s/
                         Anthony W. Mariano
                         Special Assistant United States Attorney
                         United States Attorney's Office
                         Eastern District of Virginia
                         2100 Jamieson Avenue
                         Alexandria, Virginia 22314
                         Phone: (703) 299-3700
                         Fax:   (703) 299-3868
                         Anthony.Mariano2@usdoj.gov