IN THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | No. 1:19-cr-127 |
| v. | ) | |
| | ) | |
| LOURDES TERRAZAS SILES, | ) | Hon. Leonie M. Brinkema |
| Defendant. | ) | |
| | ) | Motions Hr'g: July 5, 2019 |

**DEFENDANT'S SUPPLEMENT IN SUPPORT OF
MOTION TO DISMISS THE INDICTMENT**

Defendant Lourdes Terrazas Siles has asserted two primary (and independent) bases for dismissal: (1) The statute of limitations has expired; and (2) Ms. Terrazas Siles' expedited removal in 1999 did not comport with due process standards, resulting in a fundamentally unfair proceeding under 8 U.S.C. § 1326(d). *See* Def. Motion to Dismiss, Dkt. No. 22 (May 17, 2019). The government responds that its prosecution of Ms. Terrazas Siles is timely and suggests that this Court does not have jurisdiction to consider the § 1326(d) argument, but that in any event Ms. Terrazas Siles' expedited removal was constitutional. *See* Govt Response, Dkt. No. 23 (May 31, 2019).

This Court could resolve this case on statute of limitations grounds, but, if it does not, this Court has jurisdiction to proceed to the merits of the § 1326(d) claim. First, evidence in the factual record demonstrates that the federal government knew of Ms. Terrazas Siles' presence in 2001, thus this prosecution is untimely. Second, the Court's jurisdiction to hear a due process challenge to the validity of a *factual*

*element* of this *criminal offense* is without question, having been squarely resolved by the Supreme Court 32 years ago in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), and recently confirmed by this Court in *United States v. Silva*, 313 F. Supp. 3d 660, 673-74 (E.D. Va. – Richmond Div. May 14, 2018) (Lauck, J.) (holding 8 U.S.C. § 1225(b)(1)(D) unconstitutional under *Mendoza-Lopez*). Finally, Ms. Terrazas Siles has satisfied the requirements of § 1326(d), showing that but for the due process errors in her first (and only) removal, there is a reasonable probability she would have been permitted to withdraw her application for admission at that time.

**I.  Ms. Terrazas Siles' immigration file demonstrates that the federal government knew of her presence on May 29, 2001.**

The parties agree that the statute of limitations for an illegal reentry offense is five years. 18 U.S.C. § 3282(a). The parties further agree that the statute of limitations begins to run when a defendant is "found in" the United States. *See United States v. Uribe-Rios*, 558 F.3d 347, 352-53 (4th Cir. 2009); *United States v. Gomez*, 38 F.3d 1031, 1037 (8th Cir. 1994). The government asserts, however, that in this Circuit a defendant is not "found" until the federal government has actual knowledge of the defendant's presence, i.e., constructive knowledge is insufficient. Govt Resp. at 3. In reality, the question of what level of knowledge triggers the "found in" date is unresolved in this Circuit. *See United States v. De Leon-Ramirez*, --- F.3d ---, 2019 WL 2273510, at *4 (4th Cir. 2019) ("We have yet to decide precisely when the limitations period begins to run on this [§ 1326] offense.").[1] The government then

---

[1] In *De Leon-Ramirez* the magistrate judge had analyzed the question of actual versus constructive knowledge, finding actual knowledge based on a local police officer's call to an ICE officer regarding the defendant's presence—though the court ultimately

2

contends that Ms. Terrazas Siles' immigration file does not contain evidence of actual knowledge of her presence until her Prince William County arrest in 2016. Govt Resp. at 3-5.

The government's position is contrary to the documentary evidence. Records produced before and after the defense filed its Motion show that Ms. Terrazas Siles was "encounter[ed]" for enforcement purposes on May 29, 2001.[2] In short, immigration officials had actual knowledge of Ms. Terrazas Siles' presence in the United States by May 29, 2001. Other records attached to the government's response, as well as produced since the government filed its response, reflect additional activity in Ms. Terrazas Siles' immigration file between her January 2000 removal and August 2016 arrest in Prince William County, including on November 18, 2004, July 13, 2007, September 3, 2007, February 24, 2008, May 24, 2008.

The government claims that all of these records reflect little more than computer-generated updates to Ms. Terrazas Siles' file, the result of delayed data entry and "database migration." Thus, the government protests that none of these records reflect knowledge of Ms. Terrazas Siles' presence because none reflect an encounter with her. But, the May 29, 2001 "encounter" is called just that and the

---

held the statute of limitations had been tolled for other reasons. *See* Case No. 3:17-cr-89, 2017 WL 5163607 (E.D. Va. – Richmond Div. Oct. 11, 2017) *adopted*, 2017 WL 5162815 (E.D. Va. – Richmond Div. Nov. 7, 2017).

[2] In its Motion to Dismiss, the defense relied on a reference to a May 29, 2001 "encounter" in defense Exhibit E. After the Motion was filed, the government produced a second document, titled "Activities Search Results," describing a May 29, 2001 "encounter." That second document is attached here as Exhibit F.

3

records further specify that the encounter "activity" was for "enforcement." *See* Exhibits E & F. Specifically, the Activities Results Record, Exhibit F, states that the result of the May 29, 2001 encounter was "WatchList," the same title given to the other dates listed on which the government admits it knew of Ms. Terrazas Siles' presence—December 1999, August 2016, and August and November 2017.[3] Thus, even taking as true the government's contentions that the references to 2004, 2007, and 2008 reflect data migration or computer updates, the May 29, 2001 encounter cannot be lumped in with those. The 2004, 2007, and 2008 dates are not recorded in the Activities Search Results, but the May 29, 2001 encounter is. *See* Ex. F.

The government has offered a statement from Deportation Officer Kevin Ho who offers his opinion to explain away one mention of the May 29, 2001 encounter: "[t]his record *appears to be* a historical fingerprint enrollment entered into the system after the original date of the encounter or apprehension for watchlist purposes only." Govt Resp. at Ex. 1 ¶ 7 (emphasis added) (referencing Def. Ex. E). But Officer Ho's opinion is belied by the Activities Search Results record: In the record, entries for April 18, 2017 and November 20, 2017 are expressly described as "historical fingerprint enrollment." Ex. F. Thus, the computer system clearly had the capacity to designate an entry "historical fingerprint enrollment" if and when it was appropriate, but it did not do so for the May 29, 2001 entry.

---

[3] December 1999 is when Ms. Terrazas Siles was stopped at the San Ysidro gate; August 2016 is when she was arrested by Prince William County, upon which the federal government was (again) alerted to her presence, and she has been in custody ever since.

4

Finally, Officer Ho continues, "[i]f there had been an arrest or encounter by INS on or about May 29, 2001, there would be documents verifying that arrest or encounter, but none exist." Govt Resp. at Ex. 1 ¶ 7. The government's failure to act on its own knowledge suggests only a lack of diligence. There are myriad hypothetical reasons why the government might have failed to act on its knowledge of Ms. Terrazas Siles' presence, ranging from enforcement priorities to simple error. None of those possible explanations afford the government relief from the statute of limitations. That the government knew of Ms. Terrazas Siles' presence and failed to act still means that it knew of her presence.

But further, it is troubling that the Activities Search Results record was not produced until well after the defense moved to dismiss on the basis of the May 29, 2001 date. The document was not included in the government's earlier productions, but rather was one of a handful of documents dribbled out to the defense just before the original motions hearing date. And these were in addition to the previously unproduced documents the government attached to its response. *See* Govt Resp. Exs. 3-6. The defense has received no explanation why these documents were not produced during discovery, and now has no way of quantifying how many other documents might remain undisclosed. Moreover, the defense has asked the government to produce documents explaining the database entries and the codes used, yet, the government has not produced responsive documents to date. The government's withholding does not imbue confidence regarding what documents do or do not "exist." Rather, the belated, piecemeal production of various database

5

printouts—most of which do not appear in the hard-copy immigration file the government produced—raises the question: How many other records buried in the government's databases have not been produced because they do not exist in hard copy?

In light of the government's mishandling of its discovery obligations, the unanswered discovery requests for further explanation of the May 29, 2001 date, and the absence of documentary evidence supporting the government's position, the defense submits that this Court should infer that the facts around the May 29, 2001 encounter support the defense position. *See, e.g., Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) ("Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact at issue permits an inference that 'the party fears to produce the evidence; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.'" (quoting 2 Wigmore on Evidence, § 285 at 192 (Chadbourn rev. 1979)).

II. **This Court has jurisdiction to consider and resolve factual questions in this criminal case, including whether the 1999 removal order was obtained in violation of Ms. Terrazas Siles' due process rights.**

The government contends that Ms. Terrazas Siles may not challenge the validity of the removal order entered against her on December 6, 1999 because Congress expressly stripped the courts of jurisdiction to hear such challenges. Govt Resp. at 5 (citing 8 U.S.C. § 1225(b)(1)(D)). It is undisputed that Ms. Terrazas Siles was subjected to an expedited removal in 1999. As such, her removal would be covered by the language in § 1225(b)(1)(D) were it constitutional, but it is not. Indeed,

the question of whether an alien has a right to challenge the validity of her underlying removal order in a criminal prosecution under 8 U.S.C. § 1326 was settled by the Supreme Court in 1987. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987). Nothing the government puts forward alters the calculus, and no court has held otherwise.

### A. This Court must resolve the jurisdictional question the government has raised.

As an initial matter, the government's invocation of § 1225(b)(1)(D) raises the question whether this Court actually must confront the jurisdictional conflict with § 1326(d). The nature of the question and the specificity of the two statutes at issue mean that the conflict between them cannot be resolved by pointing to the canon of constitutional avoidance. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1086 (9th Cir. 2011) (finding conflict between § 1225(b)(1)(D) and § 1326(d) cannot be avoided and holding § 1225(b)(1)(D) unconstitutional); *United States v. Silva*, 313 F. Supp. 3d 660, 673 n.14 (E.D. Va. – Richmond Div. 2018) (Lauck, J.) (same). The statutes, though specific and contemporaneously enacted, are diametrically opposed. *See id.*

Since jurisdiction is a threshold question, and the Court can go no farther if it lacks jurisdiction, the Court must address the issue. *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party . . . when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *Allen v. United States*, 140

Fed. Cl. 550, 558 (Fed. Cl. 2018) ("Jurisdiction is a threshold matter because a case cannot proceed if a court lacks jurisdiction to hear it."). The Court cannot peek behind the jurisdictional question to assess harmlessness in the hopes of avoiding the conflict, because, by its nature, that would be an assertion of jurisdiction. The Fifth Circuit did this in *United States v. Lopez-Vasquez*, 227 F.3d 476 (2000), and the Ninth Circuit rightly concluded that this was an implicit finding of jurisdiction. *See Barajas-Alvarado*, 655 F.3d at 1086 & n.9 (because § 1225(b)(1)(D) is jurisdictional, Fifth Circuit implicitly deemed statute unconstitutional by proceeding to harmlessness inquiry). If the Court lacks jurisdiction, it can proceed no further. Therefore, this Court must confront the constitutional question the government has raised.

> **B.** **This criminal prosecution entitles Ms. Terrazas Siles to the same rights and process as any other criminal defendant.**

This is a criminal proceeding. The United States government has invoked the jurisdiction of this Court and brought Ms. Terrazas Siles before it. Accordingly, Ms. Terrazas Siles is entitled to the same rights as any criminal defendant. Important among them is the right to have the government prove every element of the charged offense to the factfinder beyond a reasonable doubt. *See, e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 290 (2000) ("[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."); *Ring v. Arizona*, 536 U.S. 584, 610 (2002) (Scalia, J. concurring) ("[T]he fundamental meaning of the jury-trial guarantee

of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives—whether the statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by the jury beyond a reasonable doubt.").

Instead, the government conflates this criminal proceeding with Ms. Terrazas Siles' 1999 removal proceeding, contending that as an alien she is not entitled to due process because of the Executive's broad authority in immigration matters. *See* Govt Resp., Dkt. No. 23, at 6. The process Ms. Terrazas Siles was due in 1999 during her expedited removal is quite a different matter than the process she is due in this criminal proceeding. As a criminal defendant, she is entitled to defend herself against this felony indictment, and the burden of proof remains on the government. *See Mendoza-Lopez*, 481 U.S. at 841 ("Persons charged with crime are entitled to have the factual and legal determinations upon which convictions are based subjected to the scrutiny of an impartial judicial officer."). *See also United States v. Silva*, 313 F. Supp. 3d 660, 672 (E.D. Va. – Richmond Div. 2018) (Lauck, J.) ("The United States' focus on the due process required in the underlying *deportation proceeding* rather than the due process required in the *criminal prosecution* at bar is misplaced."). As Justice Jackson wrote in a dissent quoted approvingly by the *Mendoza-Lopez* court, "[w]e must not forget that while the alien is not constitutionally protected against deportation by administrative process he stands on an equal constitutional footing with the citizen when he is charged with crime." *United States v. Spector*, 343 U.S. 169, 177-78 (1952) (Jackson, J., dissenting).

### C. Section 1225(b)(1)(D) is unconstitutional because it suffers from the same infirmity the Supreme Court deemed impermissible in *Mendoza-Lopez*.

When an alien is removed pursuant to the expedited procedure laid out in 8 U.S.C. § 1225(b)(1)(A), by design he is afforded no review of the removal decision. *See* Def. Motion, Dkt. No. 22, at 6 (citing 8 U.S.C. § 1225(b)(1)). An immigration officer makes the determination, reviewed by a supervisor, the alien is removed, and the law prohibits any further review. *See* § 1225(b)(1)(C); 8 CFR § 235.3(b)(7). But when a defendant is prosecuted under 8 U.S.C. § 1326 for illegal re-entry, the removal order—expedited or otherwise—becomes an element of the charged criminal offense. It is therefore a fact that must be proven by the government to the factfinder beyond a reasonable doubt, and due process afforded in removal becomes a relevant question. The government contends, however, that under § 1225(b)(1)(D), review of an expedited removal order is impermissible, even within the narrow confines of § 1326(d). The Supreme Court has held otherwise.

In *United States v. Mendoza-Lopez*, the Supreme Court said that because the existence of a prior removal order is a factual element of a § 1326 prosecution, the manner in which that order was obtained must be subject to "*some* meaningful review" by the factfinder in the later criminal proceeding. 481 U.S. 828, 838 (1987). The Court's language was explicit: "If the statute envisions that a court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not

comport with the constitutional requirement of due process."[4] *Id.* at 839. Some form of review of the prior order must be available in the subsequent criminal proceeding. *See id.* at 837-38 ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding.").

Thus, *Mendoza-Lopez* clearly resolves the conflict between § 1225(b)(1)(D) and § 1326(d). Were it otherwise, § 1225(b)(1)(D) would deprive an alien subjected to expedited removal of the constitutional requirement *Mendoza-Lopez* mandated, "at the very least," in § 1326 prosecutions. *Id.* at 838. Every court to squarely confront the constitutional conflict between §§ 1225(b)(1)(D) and 1326(d) has agreed, including this one.[5] *See United States v. Silva*, 313 F. Supp. 3d 660, 668 (E.D. Va. – Richmond Div. 2018) (Lauck, J.) ("The Court finds that 8 U.S.C. § 1225(b)(1)(D), the Jurisdiction-Stripping Statute, is unconstitutional to the extent it prohibits, in a subsequent prosecution under 8 U.S.C. § 1326(a), the Criminal Illegal Reentry Statute, '*some* meaningful review' of an alien's claim that the underlying deportation

---

[4] *Mendoza-Lopez* was not an outlier; the Supreme Court admonished over a century ago that the elements of an offense resulting in "infamous" punishment of aliens must be proven to a jury. *See Wong Wing v. United States*, 163 U.S. 228, 237 (1896) ("[W]hen congress sees fit to further promote such a policy by subjecting the persons of such aliens to infamous punishment at hard labor, or by confiscating their property, we think such legislation, to be valid, must provide for a judicial trial to establish the guilt of the accused," considering Chinese exclusion acts).

[5] As previously mentioned, *see supra* p. 8, the Fifth Circuit considered but did not decide the constitutional conflict at issue here. *See United States v. Lopez-Vasquez*, 227 F.3d 476 (5th Cir. 2000).

proceeding, which constitutes an element of the criminal charge, was 'fundamentally unfair.'").[6] *See also, e.g.*, *Barajas-Alvarado*, 655 F.3d at 1087 ("[W]e must conclude that § 1225(b)(1)(D) is unconstitutional to the extent it prohibits 'some meaningful review' in a § 1326 criminal prosecution of a claim that the proceeding that resulted in the expedited removal order was fundamentally unfair in that 'the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result.'" (citations omitted)); *United States v. Barrera-Rojo*, Case No. 18-cr-531, 2018 WL 2172925, at *1-2 (D.N.M. May 10, 2018) ("Following *Mendoza-Lopez*, a categorical prohibition of any review of a prior removal order would violate due process when the prior order is to be the basis of criminal sanctions. Pursuant to 18 U.S.C. § 3231, the Court has jurisdiction to review any removal underlying a § 1326 charge."); *United States v. Sanchez-Cervantes*, Case No. 12-cr-4, 2012 WL 1313315, at *3 (W.D. Tex. April 17, 2012) (acknowledging the Fifth Circuit's decision in *Lopez-Vasquez*, but finding jurisdiction in light of *Mendoza-Lopez* and *Barajas-Alvarado*); *United States v. Guzman-Garfias*, Case No. 10-cr-306, 2010 WL 5093938, at *3 (D. Ariz. Dec. 8, 2010) (same, affirming magistrate decision); *United States v. Lopez-Garcia*, Case No. 09-cr-1118, 2009 WL 3244702, at *3 (S.D. Cal. Oct. 6, 2009) (same, before *Barajas-Alvarado* was decided).

Because it would not even permit the review *Mendoza-Lopez* required "at a minimum" in cases like this one, § 1225(b)(1)(D) is unconstitutional. Accordingly,

---

[6] *Silva* is on appeal to the Fourth Circuit, where it has been argued and is pending a decision. *See United States v. Silva*, Case No. 18-4652, Dkt. No. 36 (4th Cir. May 9, 2019) (oral argument heard before Judges Niemeyer, Keenan, and Quattlebaum, Jr.).

12

this Court has jurisdiction to consider the merits of Ms. Terrazas Siles' § 1326(d) claim.

III. **Ms. Terrazas Siles' removal was invalid under § 1326(d).**

"Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). Put another way, the government must follow its own procedures. In Ms. Terrazas Siles' case, it did not. This failure resulted in a procedure that was fundamentally unfair because, had the immigration officer adhered to § 1225(b)'s prescriptions, there is a reasonable probability that Ms. Terrazas Siles would have been permitted to withdraw her application for admission.

Ms. Terrazas Siles has been removed only once. Even then, "removal" is a legal fiction: she was pulled out of the immigration queue before ever entering. To the extent she had to be removed, it was because the immigration officer arrested and detained her, instead of turning her around. Had she been permitted to withdraw, either in the moment at the border crossing or during the expedited removal proceeding, there would be no prior removal for the purposes of 8 U.S.C. § 1326, and this criminal prosecution could not proceed.

### A. The failure to abide by the removal procedure Congress laid out was a violation of the process due Ms. Terrazas Siles.

The procedures laid out by Congress for expedited removals are brief and unreviewable. *See* § 1225(b)(1). Nevertheless, they are procedures, and immigration officers have to follow them. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (invalidating removal order entered in violation of internal agency

13

regulations). In Ms. Terrazas Siles' case, they did not. This matters because Ms. Terrazas Siles was not a repeat immigration offender, she had no criminal record, and she repeatedly asked to go home. As such, she was a probable candidate for withdrawal of her application for admission—something immigration officers regularly granted in 1999. *See* Def. Motion at 14.

The government scoffs at Ms. Terrazas Siles' claim that certain documents were not translated for her and that she does not believe she was asked to sign the I-860, the Notice/Order of Expedited Removal. *See* Govt Resp. at 7. The government appears to think that these are minor oversights or relegated to Ms. Terrazas Siles' memory of 20-year-old events. Not so. The law requires that an expedited removal follow certain procedures, not doing so is a deprivation of due process. *See United States v. Heffner*, 420 F.2d 809, 811 (4th Cir. 1969) ("An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down."). Ms. Terrazas Siles was entitled to have her expedited removal proceeding adhere to the rules, and yet, the government's evidence shows it was not afforded to her.

Ms. Terrazas Siles' immigration file, produced by the government in discovery, lacks the paperwork that the law requires. In violation of the requirements of 8 CFR § 235.3(b)(2)(i), there is no evidence the immigration officer had Ms. Terrazas Siles sign the I-860, nor is it clear that the document was translated for her. Def. Motion at 9-10. This is no figment of Ms. Terrazas Siles' memory, as the government would have this Court believe, Govt Resp. at 8. Rather it is borne out in the immigration

records the government produced. The I-860 is a critical document, ordering Ms. Terrazas Siles' removal; that it does not contain her signature—and therefore does not conform to the legal requirements—is procedurally improper.

The government asks this Court nevertheless to assume that the immigration officer did what the law requires. Govt Resp. at 8. But, given that the immigration file evidences that the officer did not adhere to the legal requirements, there is no basis on which to afford this benefit of the doubt. Def. Motion at 10-11 (citing *United States v. Mejia-Avila*, No. 2:14-CR-0177, 2016 WL 1423845, at *1 (E.D. Wash. Apr. 5, 2016) ("As Form I-860 provides notice to Defendant of his rights, a missing signature on that page undermines the assurance that he was notified of his due process rights at the time of his removal."); *United States v. Arteaga-Gonzalez*, No. 12-CR-4704, 2013 WL 5462285, at *4 (S.D. Cal. Sept. 30, 2013) (where government "did not have evidence that Defendant had signed the reverse side of the Form I-860 as required by agency regulations," "it appear[ed] Defendant was not advised of the charges against him and did not have a chance to refute" the allegations and, therefore, was "not given the due process to which he was entitled" (citation omitted)). Indeed, doing so in an expedited removal case is particularly uncalled for. The requirements for an expedited removal are threadbare as it is, yet the government asks to be relieved of even those.

### B. Had the immigration officer followed the proper procedure, it is reasonably probable that Ms. Terrazas Siles could have withdrawn her application.

Apart from asylum (not at issue here), there is one unified statutory form of relief in expedited removal proceedings: withdrawal of application. *See* Def. Motion at 12 (citing 8 U.S.C. § 1225(a)(4); 8 CFR § 235.4). An immigration officer may, in his discretion, allow the alien to withdraw his application for admission and depart without an order of removal. *See id*. That discretion would have been guided in 1999 by the INS Inspector's Field Manual, which enumerated a non-exclusive set of factors the immigration officer could consider, including the seriousness of the immigration violation and prior findings of inadmissibility. *See id*. at 12-13.

Ms. Terrazas Siles was a young Bolivian immigrant, just 20 years old at the time of her 1999 attempted entry. She had no criminal record, no prior immigration history and did not even make it through the turnstile at the San Ysidro port of entry before being pulled out of line by an immigration official. That she had paid a coyote to use a passport to help her enter is not necessarily exacerbating.[7] Certainly, the government did not deem it sufficiently exacerbating to charge her with an offense connected to that allegation, nor even with an immigration offense. Given that the government did not deem the mere attempted entry or use of a passport significant enough to merit a criminal charge, it is disingenuous for the government to now claim that these violations were particularly egregious. *See* Govt Resp. at 12-13.

---

[7] Documents produced by the government in discovery say that the passport in question was Bolivian.

Rather, at the time of Ms. Terrazas Siles' attempted entry, immigration officers commonly offered aliens the opportunity to withdraw applications for admission. In 1999, 498,729 aliens were permitted to withdraw their application for admission, nearly three times the number who were formally removed, 180,101. *See* Dept. of Justice, Immigration & Naturalization Serv., 1999 Statistical Yearbook of the Immigration and Naturalization Service, at 202, 215.[8] Thus, withdrawal was far more common than formal removal in 1999, and Ms. Terrazas Siles' case was not out of the ordinary. It is, therefore, reasonably probable that on the facts of Ms. Terrazas Siles' case, she would have been permitted to withdraw her application. Indeed, aliens with *convictions* for false statements and prior exclusion orders have been granted withdrawals of removal. *See, e.g.*, *United States v. Raya-Vaca*, 771 F.3d 1195, 1209 (9th Cir. 2014).

The government has asserted that because the relief of withdrawal of application is discretionary, Ms. Terrazas Siles had no right to it, implying that therefore her request for relief under § 1326(d) cannot be premised upon it. *See* Govt Resp. at 11. But the question here is not whether Ms. Terrazas Siles would have been *entitled* to withdrawal of her application, but, rather, whether it is reasonably probable that she would have been permitted to do so. In *United States v. El Shami*, the Fourth Circuit held that the defendant was prejudiced for the purposes of §

---

[8] Available online at <https://www.dhs.gov/sites/default/files/publications/Yearbook_Immigration_Statistics_1999.pdf>.

1326(d) because it was plausible that he would have been granted discretionary relief. *See* 434 F.3d 659, 665 (4th Cir. 2005).

Unfortunately, the already abbreviated expedited removal procedure was not followed in Ms. Terrazas Siles' case. Instead, the handling of her 1999 removal was flawed, and the error certainly was not harmless. Ms. Terrazas Siles was subjected to an inadequate procedure, in which legally required steps appear to have been skipped. Her case was free of aggravating factors—it was her first time ever to attempt entering, and she failed even to do so. Withdrawal of application was afforded more than twice as often as formal removal in 1999. If the immigration officer had followed proper procedure, it is reasonably probable that he would have determined that her case merited withdrawal of application. Because Ms. Terrazas Siles did not receive the process due to her, the expedited removal was fundamentally unfair, and she was prejudiced as a result. Accordingly, Ms. Terrazas Siles has satisfied the § 1326(d) test for dismissal of the indictment.

## IV. Conclusion

For each of the above-stated independent reasons, the defense respectfully moves this Court to dismiss the indictment.

Respectfully submitted,
LOURDES TERRAZAS SILES

By counsel,

Geremy C. Kamens
Federal Public Defender

/s/ Cadence Mertz
Cadence Mertz
Va. Bar No. 89750

Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King St, Suite 500
Alexandria, VA 22314
(703) 600-0840 (T)
(703) 600-0880 (F)
Cadence_Mertz@fd.org


/s/ Katherine Maddox Davis
Katherine Maddox Davis
Va. Bar No. 89104
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
(202) 955-8587
kdavis@gibsondunn.com
*Pro Bono Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2019, I filed the foregoing notice with the Clerk of the Court via the CM/ECF system, which will serve true and correct copies on counsel of record.

/s/ Cadence Mertz
Cadence Mertz
Va. Bar No. 89750
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King St, Suite 500
Alexandria, VA 22314
(703) 600-0840 (T)
(703) 600-0880 (F)
Cadence_Mertz@fd.org